## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAYLA FRIESS, ISSA HADDAD,
and MELANIE TIMEUS-MCELROY
individually and  on behalf of all others
similarly situated,

            Plaintiffs,

v.

CITY OF DETROIT, PIERCE MONROE
& ASSOCIATES, L.L.C., NORMAN L.
WHITE, and JAMES R. CANTY, JR,
jointly and severally, and in their
individual and official capacities.

            Defendants.

Case No. 2:17-cv-14139
Hon. Denise Page Hood

**First Amended Complaint
and Jury Demand.
Class Action.
Declaratory and Injunctive
Relief.**

_____/

Shaun P. Godwin (74500)
*Attorney for Plaintiffs*
Godwin Legal Services, PLC
450 W Fort St, Ste 200
Detroit MI 48226
313-288-2826 / Fax: 313-457-1670
shaun@godwinlegal.com

Hugh M. Davis (P12555)
Cynthia Heenan (P53664)
John C. Philo (P52721)
*Co-Counsel for Plaintiffs*
Constitutional Litigation Associates, P.C.
450 W. Fort Street, Suite 200

Rodger D. Young (P22652)
J. David Garcia (P60194)
Daniel Paluga (P80344)
*Attorneys for Defendants City of
Detroit, White, and Canty*
Young & Associates, P.C.
27725 Stansbury Blvd. Suite 125
Farmington Hills, Michigan 48334
248.353.8620 (telephone)
248.479.7828 (facsimile)
young@youngpc.com
garcia@youngpc.com
paluga@youngpc.com

Eric B. Gaabo (P39213)

1

Detroit, Michigan 48226
(313) 961-2255/Fax: (313) 922-5130
Davis@ConLitPC.Com;
Heenan@ConLitPC.Com
Philo@ConLitPC.Com;
Info@ConLitPC.Com

City of Detroit Law Department
***Co-Counsel for Defendants City of
Detroit, White and Canty***
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
(313) 237-3052
gaabe@detroitmi.gov

_____/

## FIRST AMENDED
## CLASS ACTION COMPLAINT & JURY DEMAND

NOW COME Plaintiffs, and by and through their attorneys and for their First Amended Complaint, do hereby allege as follows.

## INTRODUCTION

1.      This case arises from a scheme to assess and collect unlawful and unauthorized amounts of fines for parking violations at the expense of every person who received a parking citation in the City of Detroit since at least June 1, 2014.

2.      Since approximately June 1, 2014, the City of Detroit has: a) assessed a fine of $45 as the base amount for the most common parking violations[1]; b) eliminated all early payment discounts for tickets paid within ten (10) days; and c)

_____

[1] E.g. parking in a prohibited area; no standing, no stopping, coach stop, fire hydrant, etc.; improper parking; blocking an alley, driveway or crosswalk; double parking or standing; expired meter and overtime parking; and improper parking during street sweeping and snow emergencies.

2

imposed a $30.00 late fee beyond the amount of late fees authorized by City ordinance. Neither of these actions is authorized by law and throughout, city officials knew that they were not authorized by law.

3.      Under Detroit's City Charter, the City Council establishes a parking fine schedule by ordinance. Detroit's duly enacted parking fine schedule, establishes: 1) a fine of $20 to $30 as the base amount for the most common violations;[2] 2) provides for an early payment discount of $10 when tickets are paid within ten (10) days; and c) does not authorize the $30 late fee that the Defendants' have imposed.

4.      As a result of assessing unauthorized and unlawful fines, Defendants have violated Plaintiffs and similarly situated persons' rights under the United States Constitution, Amend. V, XII, and XIV, the common law of the State of Michigan, and are liable to the Plaintiffs' and similarly situated persons under 42 U.S.C. § 1983 of the *Civil Rights Act of 1871* and under 18 U.S.C. § 1962 of the *Racketeer Influenced and Corrupt Organizations Act*.

## **JURISDICTION AND VENUE**

5.      Original and supplemental jurisdiction is conferred by 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 18 U.S.C. § 1964 (RICO),

---

[2] See fn 1, above.

3

28 U.S.C. § 1332(d) (class action) and 28 U.S.C. § 1367(a) (pendant jurisdiction).

6.     Venue is proper pursuant to 28 U.S.C. § 1391, since all Defendants reside or are located and/or doing business in the Eastern District of Michigan and the events giving rise to this action occurred, in significant part, within this District.

## PARTIES

7.     Plaintiff Kayla Friess is over 18 years-old and a resident of Detroit, Michigan.  Plaintiff Friess was overcharged for fines and late penalties on numerous parking violations allegedly committed in the City of Detroit on a vehicle registered to her.

8.     Plaintiff Issa Haddad is over 18 years-old and a resident of West Bloomfield, Michigan. Plaintiff Haddad was overcharged for fines on numerous parking violations allegedly committed in the City of Detroit on vehicles registered to him.

9.     Plaintiff Melanie Timeus-McElroy is over 18 years-old and a resident of the City of Detroit, Michigan. Plaintiff Timeus-McElroy was overcharged for fines and late penalties on numerous parking violations allegedly committed in the City of Detroit on vehicles registered to her.

10.     Defendant City of Detroit ("the CITY") is a municipal corporation organized under the laws of the State of Michigan that is located in Wayne County,

4

Michigan.  The City of Detroit operates a Municipal Parking Department ("MPD") and a Parking Violations Bureau ("PVB").    At all times relevant herein, this Defendant acted under color of regulation, usage, custom, and law and pursuant to its policies, practices and customs, to cause the assessment and collection of parking fines and late penalties for unlawful and unauthorized amounts.

11.    Defendant Pierce, Monroe & Associates, L.L.C, ("PIERCE MONROE") is a corporation formed and existing under the laws of the State of Michigan. It has offices and does business in the City of Detroit, Wayne County, State of Michigan.  Throughout the relevant time period in this case, Defendant PIERCE MONROE provided consulting services, managed, and administered operations for the MPD and PVB. The Defendant PIERCE MONROE work for the MPD and PVB included, but is not limited to, maintaining a database and website misrepresenting amounts due on all parking violation notices and prepared and sent notices to alleged parking violators through the U.S. Mail demanding payment on alleged violations.

12.    At all times relevant to this complaint, Defendant, Norman L. White ("WHITE"), was the Director of the City of Detroit's MPD. He is sued in his individual and official capacities.

13.    At all times relevant to this complaint, Defendant, James R. Canty, Jr ("CANTY"), was the Manager of the City of Detroit's PVB. He is sued in his

individual and official capacities.

## STATEMENT OF FACTS

*a.*   *Detroit's Parking Fine Ordinance.*

14.   Prior to April 1 of 2014, the Detroit City Council had adopted and duly enacted a parking fines ordinance that established parking fine rates at $20 and $30 as the base amount for the most common violations and that provided a discount for the early payment of parking fines.  The ordinance was codified at Chapter 55, Article II, Section 55-2-42 of the City Code.

15.   On April 3, 2014, Emergency Manager Kevyn Orr issued Order No. 24 proposing an amendment to Sec. 55-2-42.  The order proposed an increase of the base amount of parking fine rates to $45 for the most common violations and proposed elimination of the early payment discount.  The order called for a public hearing regarding the amendments and stated that "[t]he amended Parking Ordinances, as may be amended, shall be effective on the publication by the Clerk following the public hearing."

16.   Following the date set for the public hearing, the Detroit City Council adopted and duly enacted a revised parking fine ordinance that retained parking fine rates at $20 and $30 as the base amount for the most common violations and that retained a discount for the early payment of parking fines. The ordinance was not vetoed by either the Mayor or the city's Emergency Manager.

6

17.    As a result of the newly enacted parking fine ordinance that passed City Council, the Emergency Manager's proposed amendments were withdrawn, were not published by the City Clerk, and did not become effective per the terms of the Emergency Manager's order.

18.    On or about June 1, 2014, the Defendants however began to assess unlawful and unauthorized fines in excess of the amounts permitted and prescribed by City ordinance.  The Defendants' began issuing notices stating parking fine rates at $45 for the most common violations and eliminating language that had previously stated that an early-payment discount was available.

19.    In addition, since at least June 1, 2014, Defendants began to assess an unlawful and unauthorized additional late penalty of $30.00.  The notice for the late penalty describes it as a "$30 late fee after 60 days."  None of the City's ordinances authorizes the Defendants to impose an additional $30.00 late penalty for fines that remain unpaid after 60 days.[3]

b.    *Plaintiff Kayla Friess*

20.    Plaintiff Kayla Friess was overcharged at least $135.00 for parking violation fines and at least $30.00 in unauthorized late penalties.

_____

[3] Note, the City's parking fine ordinance provides for a $20 penalty for tickets paid after thirty (30) days from when the ticket is issue. The new and unauthorized $30 penalty is in addition to the $20 penalty.

7

21.    On July 11, 2016, Friess' vehicle was issued a notice of parking violation, number Z34591653, for "no standing (anytime)" in violation of "811.1" with a stated fine of $45.00. Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Friess selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $30.00. Friess was overcharged $15.00 for the violation.

22.    On July 14, 2016, Friess' vehicle was issued a notice of parking violation, number Z34684635, for "prohibited area/no parking" in violation of "801" with a stated fine of $45.00. Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Friess selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $30.00. Friess was overcharged $15.00 for the violation.

23.    On March 28, 2017, Friess' vehicle was issued notice of parking violation, number Z36431404 for "parking meter violation" in violation of "821" with a stated fine of $45.00. Friess failed to pay within 30 days and the Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened that a citation would be filed in court, "additional $30.00 court fees," "your vehicle will be booted and towed," "your license to drive may be

withheld," if $65.00 was not paid within an unspecified time period. Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $95.00. Friess selected the violation for payment and was charged $95.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $20.00. Friess was overcharged $25.00 for the violation and overcharged $30.00 for unauthorized late fees.

24.    On July 7, 2017, Friess' vehicle was issued notice of parking violation, number Z37217331, for "no standing (PM)" in violation of "813" with a stated fine of $45.00. Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Friess selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $30.00. Friess was overcharged $15.00 for the violation.

25.    On July 18, 2017, Friess' vehicle was issued notice of parking violation, number Z37165494, for "improper parking" in violation of "802" with a fine of stated fine of $45.00. On July 21, 2017, within within ten (10) days of the fine being assessed, Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Friess selected the violation for payment and was charged $45.00 to resolve the violation.

9

Pursuant to the City's ordinance, the fine for this violation should have been $30.00 and further reduced by $10.00 for early payment. Friess was overcharged $25.00 for the violation.

26.     On August 2, 2017, Friess' vehicle was issued notice of parking violation, number Z37392423, for "improper parking" in violation of "802" with a stated fine of $45.00. Friess failed to pay within 30 days and then visited the payment website for City of Detroit parking violations. The website showed the violation with a current amount due of $65.00. Friess selected the violation for payment and was charged $65.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $30.00. Friess was overcharged $15.00 for the violation.

27.     On September 14, 2017, Friess' vehicle was issued notice of parking violation, number Z37640396, for "crosswalk violation" in violation of "804.3" with a fine of stated fine of $45.00. On September 20, 2017, within ten (10) days of the fine being assessed, Friess visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Friess selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance, the fine for this violation should have been $30.00 and further reduced by $10.00 for early payment. Friess was overcharged $25.00 for the violation.

### c.    *Plaintiff Issa Haddad*

28.    Plaintiff Issa Haddad was overcharged at least $110.00 for parking violation fines.

29.    On June 11, 2014, Haddad's vehicle was issued notice of parking violation, number Z29159631, for "parking meter violation" in violation of "821" with a stated fine of $45.00. On June 16, 2014, within ten (10) days of the fine being assessed, Haddad visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Haddad selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $20.00 and further reduced by $10.00 for early payment. Haddad was overcharged $35.00 for the violation.

30.    On September 23, 2014, Haddad's vehicle was issued notice of parking violation, number Z29953206, for "parking meter violation" in violation of "821" with a stated fine of $45.00. Within ten (10) days of the fine being assessed, Haddad sent a $45.00 check through the U.S. Mail as payment for the violation. Pursuant to the City's ordinance the fine for this violation should have been $20.00 and further reduced by $10.00 for early payment. Haddad was overcharged $35.00 for the violation.

31.    On August 1, 2016, Haddad's vehicle was issued notice of parking

violation, number Z34811733, for "parking meter violation" in violation of "821" with a stated fine of $45.00. On August 24, 2016, Haddad visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Haddad selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $20.00. Haddad was overcharged $25.00 for the violation.

32.    On September 20, 2017, Haddad's vehicle was issued notice of parking violation, number Z37740603, for "fire hydrant parking violation" in violation of "805.3" with a stated fine of $45.00. On October 24, 2017, Haddad visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Haddad selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $30.00. Haddad was overcharged $15.00 for the violation.

### d.    *Plaintiff Melanie Timeus-McElroy*

33.    Plaintiff Timeus-McElroy was overcharged at least $265.00 for parking violation fines and at least $120.00 in unauthorized late penalties.

34.    On June 19, 2014, Timeus-McElroy's vehicle was issued notice of parking violation, number Z29205595, for "parking meter violation" in violation of

"821" with a stated fine of $45.00. On June 20, 2014, within ten (10) days of the fine being assessed, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $20.00 and further reduced by $10.00 for early payment. Timeus-McElroy was overcharged $35.00 for the violation.

35.     On November 25, 2014, Timeus-McElroy's vehicle was issued notice of parking violation, number Z30473494, for "crosswalk violation" in violation of "804.3" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened that a citation would be filed in court, "additional $30.00 court fees," "your vehicle will be booted and towed," "your license to drive may be withheld," if $65.00 was not paid within an unspecified time period. On April 28, 2015, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $95.00. Timeus-McElroy selected the violation for payment and was charged $95.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $30.00 with a late fee of $20. Timeus-McElroy was

13

overcharged $15.00 for the violation and $30.00 in unauthorized late fees.

36.    On January 21, 2015, Timeus-McElroy's vehicle was issued notice of parking violation, number Z30841462, for "no standing" in violation of "811.1" with a stated fine of $45.00. On January 26, 2015, within ten (10) days of the fine being assessed, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $30.00 and further reduced by $10.00 for early payment. Timeus-McElroy was overcharged $25.00 for the violation.

37.    On April 6, 2015, Timeus-McElroy's vehicle was issued notice of parking violation, number Z31376343, for "no standing" in violation of "811.1" with a stated fine of $45.00. On April 28, 2015, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation.

38.    On December 2, 2015, Timeus-McElroy's vehicle was issued notice of parking violation, number Z32913661, for "no standing" in violation of "811.1"

with a stated fine of $45.00. On December 22, 2015, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation.

39.    On December 3, 2015, Timeus-McElroy's vehicle was issued notice of parking violation, number Z32254770, for "parking meter violation" in violation of "821" with a stated fine of $45.00. On December 22, 2015, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $20.00. Timeus-McElroy was overcharged $25.00 for the violation.

40.    On February 9, 2016, Timeus-McElroy's vehicle was issued notice of parking violation, number Z32093832, for "no standing" in violation of "811.1" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened various further action if $65.00 was not paid within an unspecified time

period. On April 25, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $65.00. Timeus-McElroy selected the violation for payment and was charged $65.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation.

41.    On June 8, 2016, Timeus-McElroy's vehicle was issued notice of parking violation, number Z34334274, for "crosswalk violation" in violation of "804.3" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened various further action if $65.00 was not paid within an unspecified time period. On September 1, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $95.00. Timeus-McElroy selected the violation for payment and was charged $95.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation and overcharged $30.00 in unauthorized late fees.

42.    On June 16, 2016, Timeus-McElroy's vehicle was issued notice of

parking violation, number Z34472115, for "prohibited area" in violation of "801" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened various further action if $65.00 was not paid within an unspecified time period. On September 1, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $95.00. Timeus-McElroy selected the violation for payment and was charged $95.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation and overcharged $30.00 in unauthorized late fees.

43.     On July 8, 2016, Timeus-McElroy's vehicle was issued notice of parking violation, number Z34557994, for "parking meter violation" in violation of "821" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened various further action if $65.00 was not paid within an unspecified time period. On September 1, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current

amount due of $65.00. Timeus-McElroy selected the violation for payment and was charged $65.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $20.00. Timeus-McElroy was overcharged $25.00 for the violation.

44.     On August 19, 2016, Timeus-McElroy's vehicle was issued notice of parking violation, number Z34970261, for "parking meter violation" in violation of "821" with a fine of stated fine of $45.00. On September 1, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for the underlying violation should have been $20.00. Timeus-McElroy was overcharged $25.00 for the violation.

45.     On March 22, 2017, Timeus-McElroy's vehicle was issued notice of parking violation, number Z36342703, for "parking meter violation" in violation of "821" with a fine of stated fine of $45.00. Timeus-McElroy failed to pay within 30 days and a $20.00 late penalty was added to the balance. The Defendants sent a notice by U.S. Mail, which stated that she was responsible for the violation and threatened various further action if $65.00 was not paid within an unspecified time period. On June 30, 2016, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due

of $95.00. Timeus-McElroy selected the violation for payment and was charged $95.00 to resolve the violation. Timeus-McElroy was overcharged $25.00 for the violation and overcharged $30.00 in unauthorized late penalties.

46. On June 9, 2017, Timeus-McElroy's vehicle was issued notice of parking violation, number Z36855755, for "no standing" in violation of "811.1" with a stated fine of $45.00. On June 30, 2017, Timeus-McElroy visited the payment website for City of Detroit parking violations, which showed the violation with a current amount due of $45.00. Timeus-McElroy selected the violation for payment and was charged $45.00 to resolve the violation. Pursuant to the City's ordinance the fine for this violation should have been $30.00. Timeus-McElroy was overcharged $15.00 for the violation.

## CLASS ACTION ALLEGATIONS

47. The named Plaintiffs bring this action, on behalf of themselves and all others similarly situated, to assert the claims alleged in this Complaint on a common basis.

48. A class action is a superior means, and the only practicable means, by which the named Plaintiffs and Class Members can challenge Defendants' scheme.

49. This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(l)–(4) and Rule 23(b)(1) and (2) of the Federal Rules of Civil Procedure.

50.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

51.     The Class is defined as: all persons with vehicles registered to them whose vehicles were assessed a parking violation fine and/or late penalty in excess of the fine and late penalty authorized by City ordinance at the time of assessment.

52.     On information and belief, around 300,000 notices of parking violations are issued each year by the Defendants, which impacts tens of thousands of registered car owners of residents from across the United States and Canada.

53.     The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members. The named Plaintiffs seek relief concerning whether the scheme violates the rights of the Class Members and relief mandating that Defendants end the scheme, so that the rights of the Class Members will be protected in the future and additionally, obtaining appropriate damages, compensation and other equitable remedies.

54.     These common legal and factual questions arise from one scheme: Defendants' assessment and collection of unlawful and unauthorized parking fines and late penalties in excess of the rates prescribed by City ordinance.

55.     The essential facts and legal issues do not vary from Class Member to Class Member and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

56.     Among the most important, but not the only, common questions of fact are:

- Whether Defendants assessed and collected parking fines and late penalties in excess of those allowed by City ordinance.

- Whether Defendants had an unconstitutional practice, custom, policy, or pattern that resulted in constitutional violations.

57.     The named Plaintiffs' claims are typical of the other Class Members' claims and they have the same interests in this case as all other Class Members. Each Class Member was assessed a parking violation fine by the Defendants in an amount greater than the fine amount authorized by City ordinance. Each Class Member was damaged when they paid that fine. Each Class Member who paid the fine within ten (10) days was denied the early payment discount to which they were entitled. Further, many Class Members suffered additional damage when they were assessed and paid an unauthorized late penalty of $30.00. The answer of whether Defendants' scheme is a violation of law and/or inequitable will determine the claims of the named Plaintiffs and every other Class Member.

58.     If the named Plaintiffs succeed in their claims against Defendants that ruling will likewise benefit every other Class Member.

59.     The named Plaintiffs are adequate representatives of the Class because their interests in the vindication of the legal claims that they raise are entirely aligned with the interests of the other Class Members, who each have the

21

same basic claims. They are members of the Class, and their interests coincide with, and are not antagonistic to, those of the other Class Members.

60.     There are no known conflicts of interest among Class Members, all of whom have a similar interest in vindicating their rights in the face of Defendants' unlawful parking violation fine scheme, recovering monies lost as a result the Defendants' failure to assess and collect fines owed in accordance with the City's ordinance.

61.     Plaintiffs' counsel have extensive experience litigating complex constitutional and civil rights matters in Federal Court and have relevant experience as class action counsel.

62.     Class action status is appropriate because Defendants have acted in the same manner with respect to all Class Members and prosecution of separate actions by individual members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

63.     The Class also seeks declaratory and injunctive relief to enjoin Defendants from assessment and collection of unauthorized and inflated fines. Because the putative Class challenges Defendants' scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every

Class Member, Rule 23(b)(2) certification is appropriate and necessary.

64. Injunctive relief compelling Defendants to comply with these constitutional rights will similarly protect each Class Member from being subjected to Defendants' unlawful policies and practices in the future. A declaration and injunction stating that Defendants cannot assess or collect excessive parking violation fines and late penalties would provide relief to every Class Member. Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

**COUNT I**
**<u>Municipal Liability for Violations of the Fifth, Eighth, and Fourteenth</u>**
**<u>Amendments to the U.S. Constitution</u>**
**(42 U.S.C. § 1983)**

65. Plaintiffs hereby incorporate by reference herein all paragraphs of this Complaint, as if fully state herein.

66. Under 42 U.S.C. § 1983, Defendant City of Detroit is a "person" liable for its unconstitutional practices, customs, policies, or patterns that result in constitutional violations.

67. Municipal Defendant City of Detroit, had and has an unconstitutional practice, custom, policy, and pattern of using their agents and employees to assess and collect parking violations with inflated parking fines and late penalties not authorized by City ordinance from Plaintiffs and the Class.

68.     The unconstitutional acts of agents and employees of the City of Detroit were undertaken pursuant to a practice, custom, policy, pattern, or decision by, Defendants White and Canty to direct agents and employees of the municipal Defendants to assess and collect parking fines and late penalties not authorized by City ordinance.

69.     Defendants White and Canty are responsible in their official capacities for City of Detroit's unlawful unconstitutional practice, custom, policy, and pattern.  Each of these Defendants was the final decision maker on policy concerning fine rates assessed on parking violation notices, the fine rates charged and collected on violations, whether early payment discounts would be provided, and whether any $30.00 late penalty would be assessed and collected on those violations that remained unpaid after 60 days. Defendant White was the director of the City's MPD and Defendant Canty was the Manager of the City's PVB and each acted, pursuant to their authority and responsibility as an official of the City of Detroit, under color of regulation, usage, custom, and law and pursuant to its policies, practices and customs

70.     Defendants' practice, custom, policy, pattern or decision was a direct and proximate cause of the constitutional violations suffered by Plaintiffs and similarly situated persons.

71.     The Defendants' unconstitutional scheme to assess and collect parking

violation fines and late penalties in excess of those prescribed by City ordinance was in violation of Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution:

a. Defendants violated Plaintiffs' and similarly situated persons' substantive due process rights, pursuant to the Fifth and Fourteenth Amendments, where it was fundamentally unfair for the Plaintiffs to be assessed arbitrarily established fines and late penalties in amounts exceeding those fines and late penalties established by the City's ordinance and be forced to pay these inflated amounts in order to admit responsibility to the underlying parking violation and fully resolve the allegations against them.

b. Defendants violated Plaintiffs' and similarly situated persons' procedural due process rights, pursuant to the Fifth and Fourteenth Amendments, where Plaintiffs were provided notice stating incorrect fine amounts, failed to indicate a fine reduction of $10 when the fine was paid within ten (10) days, and provided no meaningful opportunity to contest the fine amounts and late penalty fee amounts.

c. Defendants violated Plaintiffs' and the Class Members' procedural due process rights, pursuant to the Fifth and Fourteenth Amendments, where Plaintiffs were forced to pay fines and late penalties in amounts in excess of those fines and late penalties allowed by the City's Ordinance in order to admit responsibility to the violation and fully resolve the allegations against them.. Plaintiffs had a procedural due process right to admit responsibility for their parking violations and resolve the allegations against them by paying the actual amount due and not the inflated fines and late penalties demanded by the Defendants

d. Defendants violated Plaintiffs' and similarly situated persons' right to equal protection of the law, pursuant to the Fourteenth Amendment, where Plaintiffs and similarly situated persons were forced to pay fines and late penalties in amounts in excess of those fines and late penalties allowed by the City's ordinance in order to resolve the alleged parking violations while other persons were allowed to pay the

correct amount, a partial amount, or nothing at all to resolve the allegations against them, or otherwise not have the outstanding notice of parking violation not counted against them for purposes of calculating whether their vehicle is eligible to be booted or towed and/or hold the ability to renew a drivers license.

e.   Defendants violated Plaintiffs' and similarly situated persons' right to be free from excessive fines, pursuant to the Eighth Amendment, where they were assessed and forced to pay unlawful and unauthorized fines and late penalties in excess of those fines and late penalties allowed by City ordinance in order to admit responsibility to the violation.  These fines were excessive and disproportionate to the offense where the City's ordinance set forth a lower fine amount as adequate punishment for the violation and did not provide for an additional $30 late penalty after 60 days.

72.     Defendant City of Detroit is liable under a municipal liability for these violations and Defendants White and Canty are liable for these violations in their official capacities. Defendant Pierce, Monroe & Associates, L.L.C. is liable as a state actor.

73.     Qualified immunity is not available to Defendants.

WHEREFORE Plaintiffs pray this Honorable Court to enter Judgment against Defendants and award Plaintiffs and similarly situated persons damages in such amount as to adequately compensate them along with their attorneys' fees and costs pursuant to 42 U.S.C. §1988.

## COUNT II
## RICO
## (18 U.S.C. § 1962(c))

74.     Plaintiffs hereby incorporate by reference herein all Paragraphs of this

Complaint, as if fully stated herein.

75.     Defendants Pierce, Monroe & Associates, L.L.C., Norman White, and James Canty are the "Defendant RICO individuals" and are culpable persons for the underlying criminal acts alleged herein.

76.     Defendant RICO individuals were engaged in an enterprise to run the City of Detroit's Municipal Parking Department and Parking Violations Bureau whose activities affected interstate commerce and in which they fraudulent represented, assessed and collected fines and unauthorized late penalties for parking violations in the City of Detroit for amounts in excess of that provided by City ordinance and caused the U.S. Mail and interstate wires to be used in furtherance of this scheme in violation of 18 U.S.C. §§ 1341 and 1343.

77.     Defendant RICO individuals with malice, intent and knowledge agreed to and intended to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the Class.

> a. Defendants created and arranged to be issued notices of parking violations to each of the Plaintiffs and the Class, which misrepresented the fine amount due for each of the alleged parking violations issued, between June 1, 2014 and the present, with each notice setting forth a fine amount in excess of the fine amount allowed by the City's ordinance and that failed to indicate that the fine amount would or should be reduced by $10 when the fine was paid within ten (10) days from the date the notice was issued, and instructed Plaintiffs and similarly situated persons to pay their fines to Defendants through

the U.S. Mail or through Defendants' website.

b.  Defendants maintained payment collection websites¸ between June 1, 2014 and the present, which misrepresented, on each and every occasion that Plaintiffs and similarly situated persons visited the websites, the parking violation fine amounts due for each and every notice issued, between June 1, 2014 and the present, by restating the incorrect fine amount contained on the original notice and failed to indicate and, where applicable, provide a fine reduction of $10.00 when the fine was paid within ten (10) days.

c.  Defendants created and arranged to send through the U.S. Mail late notices to Plaintiffs and similarly situated persons on notices of parking violations issued between June 1, 2014 and the present. These late notices were sent at or around 31 days following the issuance of the original parking violation notice for each and every particular notice that had not been paid or contested.  Each and every late notice stated an aggregated amount due that was a misrepresentation of the amount due and was based upon the incorrect fine contained on the original notice and a valid $20.00 late fine that was allowed by the City's ordinance. Each late notice contained language that instructed Plaintiffs and similarly situated persons to pay Defendants through the U.S. Mail or through Defendants' websites. Further, Defendant's fraudulently claimed that the Plaintiffs car would be towed if payment was not made. This misrepresentation of the amount now due for each violation was also repeated on the Defendants' websites on each and every visit the Plaintiffs and Class Members made to the site. .

d.  Defendants created and arranged to send through the U.S. Mail citations to Plaintiffs and similarly situated persons on notices of parking violations issued between June 1, 2014 and the present. These citations were sent at or around 60 days following the issuance of the original parking violation notice for each and every particular notice that had not been paid or contested.  Each and every citation stated an aggregated amount due that was a misrepresentation of the amount due and was based upon the incorrect fine contained on the original notice and a valid $20.00 late fine that was allowed by the City's ordinance and an additional $30.00 late fine which was not authorized by the City's ordinance. Each citation contained language that

instructed Plaintiffs and similarly situated persons to pay Defendants through the U.S. Mail or through Defendants' websites. This misrepresentation of the amount now due for each violation was also repeated on the Defendants' websites on each and every visit the Plaintiffs and Class Members made to the site.

78.   Pursuant to and in furtherance of their fraudulent scheme, Defendant RICO individuals committed multiple related acts of mail and wire fraud to defraud Plaintiffs and the Class.

79.   The acts of mail and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

80.   The Defendant RICO individuals have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

81.   As a direct and proximate result of the Defendant RICO individuals' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and similarly situated persons were injured in their business and property where they paid fines to resolve their individual parking violations in amounts in excess of those allowed by the City's ordinance for each and every parking violation. Further, Plaintiffs and similarly situated persons were injured in their business and property where they were denied the early payment discount on fines paid within ten (10) days. Moreover, Plaintiffs and similarly situated persons were injured in

their business and property where they paid an additional $30.00 late penalty which was not authorized by any City ordinance.

WHEREFORE, Plaintiffs and similarly situated persons requests that this Court enter judgment against Defendants Pierce, Monroe & Associates, L.L.C., Norman White, and James Canty for actual damages, treble damages, costs and attorney's fees.

## COUNT III
## RICO CONSPIRACY
## (18 U.S.C. § 1962(d))

82.     Plaintiffs hereby incorporate by reference herein all Paragraphs of this Complaint, as if fully stated herein.

83.     Defendants Pierce, Monroe & Associates, L.L.C., Norman White, and James Canty are the "Defendant RICO conspirators."

84.     As set forth above, the Defendant RICO conspirators agreed and conspired to violate 18 U.S.C. § 1962(c) when they agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

85.     The Defendant RICO conspirators intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Defendant RICO conspirators knew that their

predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

86.     As direct and proximate result of the Defendant RICO conspirators' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962 (c) and (d), Plaintiffs and similarly situated persons were injured in their business and property where they paid fines to resolve their individual parking violations in amounts in excess of those allowed by the City's ordinance for each and every parking violation. Further, Plaintiffs and similarly situated persons were injured in their business and property where they were denied the early payment discount on fines paid within ten (10) days. Moreover, Plaintiffs and similarly situated persons were injured in their business and property where they paid an additional $30.00 late penalty which was not authorized by any City ordinance.

87.     WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants Pierce, Monroe & Associates, L.L.C., Norman White, and James Canty for actual damages, treble damages, costs and attorney's fees.

**COUNT IV**
**Unjust Enrichment**
**(Common Law)**

88.     Plaintiffs hereby incorporate by reference herein all Paragraphs of this Complaint, as if fully state herein.

89.     Defendants City of Detroit, and Pierce, Monroe & Associates, L.L.C., are responsible in equity to Plaintiffs and similarly situated persons for common law unjust enrichment resulting from their scheme to assess and collect parking violation fines and late penalties at rates in excess of those rates prescribed by the City's ordinance and cannot equitably retain the unlawfully received proceeds.

90.     Defendants received a benefit when Plaintiffs and similarly situated persons paid parking violation fines and late penalties in excess of those prescribed by the City's ordinance.

91.     It is inequitable for Defendants to retain the proceeds from Plaintiffs and similarly situated persons for parking violation fines and late penalties paid in excess of the City's ordinance and to which Defendants were not entitled to.

92.     As a direct and proximate cause of the Defendants' improper conduct, the Defendants have collected tens of thousands of dollars in fines and late penalties to which they were not legally entitled.

93.     Under equitable principles, the Defendants should be required to disgorge the amounts unlawfully assessed and paid by the Plaintiffs and the Class.

94.     Defendants are not entitled to governmental immunity pursuant to the

Governmental Liability Immunity Act for this equitable claim.

WHEREFORE Plaintiffs pray that this Honorable Court enter Judgment against Defendants Detroit and Pierce, Monroe & Associates, L.L.C., and make an equitable award to them and similarly situated persons that will adequately compensate them for those fines and late penalties wrongfully obtained by the Defendants including, but not limited to, interest, costs and attorney fees and other damages, as allowed in law and equity.

## COUNT V
## Assumpsit / Money Had and Received
## (Common Law)

95.     Plaintiffs hereby incorporate by reference herein all Paragraphs of this Complaint, as if fully state herein.

96.     Defendants City of Detroit and Pierce, Monroe & Associates, L.L.C., have assessed and collected parking violation fines and late penalties against Plaintiffs and similarly situated persons in excess of those authorized by ordinance.

97.     These excess fines and late penalties constitute an unlawful exaction.

98.     A claim to recover amounts paid to a governmental unit in excess of the amount allowed under law is properly filed as an equitable action in assumpsit for money had and received.

99.     Plaintiffs and similarly situated persons are entitled to an equitable

action of assumpsit to recover the illegal exaction by the Defendants.

100.   As a direct and proximate cause of the Defendants' improper conduct, the Defendants have collected tens of thousands of dollars in fines to which they were not legally entitled.

101.   By paying the excessive and unauthorized fines and late penalties, Plaintiff and similarly situated persons have conferred a benefit upon the Defendants.

102.   Under equitable principles, the Defendants should be required to disgorge those amounts unlawfully collected.

103.   Defendants are not entitled to governmental immunity pursuant to the Governmental Liability Immunity Act for this equitable claim.

WHEREFORE Plaintiffs pray that this Honorable Court enter Judgment against Defendants Detroit and Pierce, Monroe & Associates, L.L.C. and make an equitable award to them and similarly situated persons that will adequately compensate them for those fines and fees wrongfully exacted by the Defendants including, but not limited to, interest, costs and attorney fees and other damages, as allowed in law and equity.

## COUNT VI
## Fraud
### (Common Law)

104.   Plaintiffs hereby incorporate by reference herein all Paragraphs of this

34

Complaint, as if fully state herein.

105.   Defendant Pierce, Monroe & Associates, L.L.C.,, is liable to Plaintiffs and similarly situated persons under common-law fraud for fines and late penalty amounts paid in excess of those allowed by the City's ordinance.

106.   Defendant made material misrepresentations to the Plaintiffs and similarly situated persons when they issued notice of parking violations with an unauthorized fine amount stated on them which was higher than the authorized fine schedule for the particular violation and failed to state the availability of and/or otherwise provide them with an early payment discount for fines paid within ten (10) days of the assessment. Defendant made further material misrepresentations when they listed these inflated amounts on their payment website as amounts now due. Additionally, Defendant made this same misrepresentation in overdue notices and citations that it mailed.

107.   Defendant further made material misrepresentations to the Plaintiffs and similarly situated persons when they claimed that an additional $30.00 late penalty was owed where there was no authority for them to impose a $30.00 late penalty.

108.   Defendant knew its representations were false or made them willfully, recklessly and callously without positive assertion and knowledge of their truth.

109.   Defendant intended that Plaintiffs and similarly situated persons

would rely on its representations and make payment of the assessed fine and late penalties for an amount greater than that which Defendant was entitled.

110.   Plaintiffs and similarly situated persons acted in reliance on the misrepresentation and paid Defendant the unauthorized fine amounts and late penalties.

111.   Plaintiffs and similarly situated persons incurred damages when they paid the assessed unlawful, unauthorized and excessive fines and late penalties to Defendant in an amount greater than that which Defendant was entitled to receive.

112.   As a direct and proximate cause of the Defendant's fraud, the Defendant has obtained tens of thousands of dollars in fines and late penalties from Plaintiffs and similarly situated persons which it was not legally entitled to collect.

WHEREFORE, Plaintiffs pray that this Honorable Court enter Judgment against Defendant Pierce, Monroe & Associates, L.L.C., and award to them and similarly situated persons damages that will adequately compensate them for those fines and fees wrongfully exacted by the Defendants including, but not limited to, interest, costs and attorney fees and other damages, as allowed in law and equity.

## Count IX
## Declaratory and Injunctive Relief

113.   Plaintiffs hereby incorporate by reference herein all Paragraphs of this Complaint, as if fully state herein.

114.   Plaintiffs and similarly situated persons seek a declaratory judgment that Defendants' policies, practices, customs, acts and/or omissions as described herein are unlawful and violate their rights under the U.S. Constitution, and the laws of the State of Michigan.

115.   An order and judgment preliminarily and permanently enjoining Defendants, their subordinates, agents, employees, representatives, and all others from acting or purporting to act in concert with them, from assessing parking violation fines and late penalties in excess of the amounts prescribed by City ordinance.

116.   An order and judgment preliminarily and permanently enjoining Defendants, their subordinates, agents, employees, representatives, and all others from acting or purporting to act in concert with them, from collecting parking violation fines and late penalties in excess of the amounts prescribed by City ordinance.

117.   An order and judgment preliminarily and permanently enjoining Defendants, their subordinates, agents, employees, representatives, and all others from issuing parking violation notices that do not contain notice that a $10.00 early payment discount is available for fines paid within ten (10) days of assessment, as prescribed by City ordinance to Plaintiffs or any member of the Class.

118.   An order and judgment preliminarily and permanently enjoining

Defendants, their subordinates, agents, employees, representatives, and all others from assessing or claiming that a $30.00 late penalty, or any other late penalty not authorized by City ordinance, has become due, at or around, 60 days from the date of the parking violation.

### PLAINTIFFS' JURY DEMAND

Plaintiffs, on behalf of themselves and all others persons similarly situated, known and unknown, and by and through counsel demand a trial by jury in the above-captioned matter on all issues so triable.

Respectfully submitted,

GODWIN LEGAL SERVICES, PLC,

_/s/ Shaun P. Godwin_____
By:  Shaun P. Godwin (P74500)
*Attorney for Plaintiffs*
450 W. Fort St, Ste 200
Detroit MI 48226
313-288-2826/Fax 313-457-1670
shaun@godwinlegal.com

Dated: 5/14/2018