UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAYLA FRIESS, et al.,

       Plaintiffs,

                                     Case No. 17-14139

v.

                                 HON. DENISE PAGE HOOD

CITY OF DETROIT, et al.,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION
## FOR JUDGMENT ON THE PLEADINGS [Dkt. No. 32]

## I.      INTRODUCTION

Plaintiffs paid fines to Defendant City of Detroit ("City") after being ticketed for parking violations in the City. In 2017, Plaintiffs filed a putative class action alleging that the fines are unlawful. Defendants recently filed a Motion for Judgment on the Pleadings. Dkt. No. 32. The Motion has been fully briefed, and the Court held a hearing on the Motion on October 17, 2018. For the reasons that follow, the Court grants the Motion.

## II.     BACKGROUND

On March 14, 2013, Kevyn Orr was appointed Emergency Manager of the City. On April 11, 2013, the Emergency Manager issued Emergency Manager Order No.

3 ("Order 3").  Order 3 authorized the Mayor and City Council to continue to carry out the business, proceedings, administration, and operation of City services, subject to approval of the Emergency Manager, and the Mayor and City Council did so.  On July 17, 2013, the City filed a Chapter 9 Bankruptcy petition.  In March 2014, the City announced that it intended to increase the fines for parking violations in the City.  On April 3, 2014, the Emergency Manager issued Emergency Manager Order No. 24 ("Order 24"), which purported to amend portions of Chapter 55 of the City Code of Ordinances ("City Code").  Order 24 included the following provisions:

1.　　In accordance with Section 4-115 the Clerk is hereby instructed to publish this Order and Exhibits A and B hereto showing the proposed amendments to the Parking Ordinances in their entirety in a daily newspaper of general circulation no later than Tuesday, April 8, 2014.

2.　　In accordance with Section 4-115 a public hearing regarding the amendments proposed in Exhibits A and B will take place on Monday, April 14, 2014 at the Coleman A. Young Municipal Center, 2 Woodward Ave., on the 13th floor at 3 p.m.

3.　　All orders of the [Emergency Manager], ordinances and resolutions of the City Council of the City, and all parts of orders, ordinances or resolutions in conflict with this Order are hereby repealed to the extent of such conflict.

4.　　Nothing in this Order shall be interpreted as contrary to Federal law.

5.　　This Order is effective immediately upon the date of execution below.

6.　　The amended Parking Ordinance, as may be amended, shall be effective on the publication by the Clerk following the public hearing described in Paragraph 1.

7.      If any component of this Order is declared illegal, unenforceable, or ineffective by a court of competent jurisdiction, such component shall be deemed severable so that all components contained in this Order shall remain valid and effective.

8.      The [Emergency Manager] may modify, amend, rescind, replace, supplement, or otherwise revise this Order at any time.

9.      This Order shall be distributed to the Mayor, City Council members and all department heads.

Pursuant to the new parking violation fine schedule set forth in Exhibits A and B to Order 24, basic fines were to be increased from $20 to $45, and the $10 discount for parking violations paid within 10 days of being issued was eliminated.

The complete text of Order 24 was published in the Detroit Legal News on April 8, 2014, and the published text identified both the portions of Chapter 55 that were deleted and the new provisions that were being added. The April 8, 2014 publication provided notice that a public hearing to inform the public of the changes would be held on April 14, 2014. The public hearing was held on April 14, 2014.

In May 2014, the City Council proposed Ordinance 09-14. The purpose of Ordinance 09-14 was to incorporate the Michigan Uniform Traffic Code into a City Ordinance, which allowed the City to collect fines and costs for state law traffic violations (instead of such fines and costs being collected by the State of Michigan). Ordinance 09-14 did not include or mention the parking violation fine schedule set forth in Order 24; rather, Ordinance 09-14 included the parking violation fine

schedule codified in the City Code prior to Order 24, moving it from Section 55-2-42 to Section 55-1-32 of Chapter 55. The City Council noticed a May 19, 2014 hearing on proposed Ordinance 09-14 in the Detroit Legal News on May 13, 2014. On May 19, 2014, a public hearing on Ordinance 09-14 was held, and City Council approved Ordinance 09-14 the same day.

On November 12, 2014, the City's Bankruptcy Plan was confirmed. Dkt. No. 32, Ex. N. On December 8, 2014, the Emergency Manager issued Emergency Manager Order No. 44 ("Order 44"). Dkt. No. 32, Ex. C. Paragraph 17 of Order 44 provided that all prior Emergency Manager Orders were incorporated and reaffirmed. On April 18, 2018, approximately four months after this case was filed, the City Council approved Ordinance 04-18, which purported to clarify Chapter 55 of the City Code. Ordinance 04-18 affirmed the parking violation fines set forth in Order 24, retroactively effective to April 14, 2014. Notice of a hearing on Ordinance 04-18 was published in the Detroit Legal News on April 12, 2018, and a public hearing was held on April 17, 2018.

Between July 11, 2016 and September 14, 2017, Plaintiff Kayla Friess was issued numerous notices of parking violations in and by the City. Between June 11, 2014 and September 20, 2017, Plaintiff Issa Haddad was issued numerous notices of parking violations in and by the City. Between June 19, 2014 and June 9, 2017,

4

Plaintiff Melanie Timeus-McElroy was issued numerous notices of parking violations in and by the City. The notices of parking violations issued by the City to Plaintiffs provided that a $45 fine was due within 30 days and that "an additional $69.00 late fee is assessed on a $45.00 ticket[.]"[1] Dkt. No. 36, Ex. 8.

It is undisputed that Plaintiffs paid all of the notices of parking violations issued to them. In the instances where a Plaintiff did not timely pay a parking violation fine, the City allegedly imposed a $30 late penalty on top of the initial fine, plus a $20 late penalty authorized by the City Code. *See* Section 55-1-44 ("failure to pay a parking fine to the Parking Violations Bureau within 30 days of the date of issuance shall result: (1) in a $20.00 penalty being added to the original fine where the vehicle is registered in this state."). Plaintiffs state that they did not request a hearing to contest: (1) any of the notices of parking violations because they were responsible for each of the alleged parking violations, or (2) the amount of the fines imposed for the parking violations.

## III.   APPLICABLE LAW

---

[1] It unclear whether all of the notices of violations issued to Plaintiffs contained this same language because the language, especially regarding the $69.00 late fee, is not consistent with Order 24, Ordinance 09-14, or Ordinance 04-18.

In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Fed.Civ.P. 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ANALYSIS

## A.    Effect of Order 24

Defendants first contend that Order 24, by its terms, amended the City's schedule for parking violations to increase fines for basic parking violations from $20 to $45 and to eliminate a $10 discount for parking violation fines paid within 10 days. Defendants argue that the Emergency Manager had legitimate reasons and the authority to take that action and was not subject to the procedural requirements applicable to City Council. Defendants further assert that Order 44 reaffirmed all prior orders of the Emergency Manager, including Order 24.

Plaintiffs counter that the Emergency Manager did not have the authority to enact Order 24 in the absence of compliance with the Local Financial Stability and Choice Act ("LFSCA"). Plaintiffs assert that the LFSCA allowed the Emergency Manager to "act for and in place and stead of" the Mayor and City Council, M.C.L. § 141.1549(2); M.C.L. § 141.1552(1)(dd)(i), but did not exempt the Emergency Manager from mandatory provisions of the Home Rule City Act when seeking to establish parking violation fines by ordinance. The Home Rule City Act states that provisions must be in place for "[a]dopting, continuing, amending, and repealing the city ordinances and for the publication of each ordinance before it becomes operative." M.C.L. § 117.3(k).

Plaintiffs assert that Order 24 did not satisfy state law that requires that parking violation fines be set by ordinance. M.C.L. § 600.8395(1) ("A city, village, or

township may establish a parking violations bureau to accept civil infraction admissions in parking violation cases and to collect and retain civil fines and costs as prescribed by ordinance."). Defendants respond that the Emergency Manager had the authority to "issue . . . <u>orders</u> the emergency manager considers necessary . . . , including, but not limited to, <u>orders</u> for the timely implementation of a financial and operating plan . . ." M.C.L. § 141.1550 (emphasis added). Defendants state that, as the Emergency Manager only had power to act through orders, not ordinances, the Emergency Manager acted properly in enacting Order 24.

Plaintiffs next argue that, even if the Emergency Manager could raise parking violation fines without amending the ordinance, the Emergency Manager did not even satisfy the requirements of the text of Order 24 to make the amended parking violation fines schedule effective. Plaintiff relies on the language in Paragraph 6 of Order 24, which provides that:

> The amended Parking Ordinance, as may be amended, shall be effective on the publication by the Clerk following the public hearing described in Paragraph 1.

Plaintiffs argue that Paragraph 6 required publication of the "amended Parking Ordinance" <u>after</u> the public hearing in order for the amended Parking Ordinance to take effect. It is undisputed that there was no publication after the April 14, 2014

public hearing of any amendments to the Parking Ordinance that reflected an increase in any parking violation fines.

Defendants dismiss Plaintiffs' argument regarding Paragraph 6, stating that no public hearing was required pursuant to the Home Rule City Act. Defendants accurately maintain that the Home Rule City Act only requires "publication of each ordinance before it becomes operative," M.C.L. § 117.3(k), and the entire Order 24 was published in the Detroit Legal News on April 8, 2014, before Order 24 became operative. Defendants also argue that there is no legal authority for Plaintiff's argument and claim that it ignores the Emergency Manager's authority to exercise "broad powers in receivership to rectify the financial emergency and assure the fiscal accountability of the [City] and the [City's] capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare." M.C.L. § 141.1549(2). Defendants' argument, however, ignores – and fails to directly respond to – Plaintiffs' argument that there was no publication of the amended Parking Ordinance after the April 14, 2014 public hearing, which Paragraph 6 of Order 24 seems to require in order to make effective the amended parking violation fines set forth in Exhibits A and B of Order 24.

The Court is not persuaded that Order 24, in itself, is grounds for granting Defendants' motion for judgment on the pleadings with respect to Count I. The Court

holds that Defendants are not entitled, at this time, to a judgment as a matter of law, that the amended Parking Ordinance discussed in Order 24 took effect after the public hearing on April 14, 2014.

**B.      Effect of Ordinance 09-14**

Defendants argue that Ordinance 09-14 had no bearing on the validity of Order 24. Defendants state that the Emergency Manager's statutory authority preempted any conflicting actions taken by the City Council or Mayor, M.C.L. § 141.1549(2), such that the City Council could not have overruled Order 24 unless the Emergency Manager consented to Order 24 being overruled, and the Emergency Manager did not do so. For that reason, even though Ordinance 09-14 included a list of the parking violation fines in effect for the City (and the list mirrored that of the parking violation fines in place prior to the existence of Order 24), Defendants argue that the parking violation fine schedule in effect prior to Order 24 did not come back into effect when Ordinance 09-14 was approved.

Defendants also contend that Ordinance 09-14 was passed for reasons unrelated to the parking violation fines, specifically, to allow the City to collect traffic violation fines stemming from state law traffic violations. Defendants further assert that, in order to change the parking violation fine schedule adopted by Order 24, Ordinance 09-14 would have had to identify the parking violation fine schedule in Order 24 and

indicate that Ordinance 09-14 was replacing that parking violation fine schedule. *See* City Code, Section 4-115. As Ordinance 09-14 did not indicate, expressly or implicitly, that it was amending or repealing Order 24, Defendants conclude that Ordinance 09-14 could not have nullified Order 24.

Plaintiffs counters that, because the amended Parking Ordinance set forth in Order 24 did not take effect, the parking violation fine schedule attached to Ordinance 09-14 – which overhauled the parking ordinances set forth in Chapter 55 – constituted the parking violation fine schedule in effect as of May 19, 2014 (and when Plaintiffs were ticketed). Plaintiffs argue that Emergency Order 3 allowed the City Council to approve Ordinance 09-14.

This issue of which the parking violation fines were in effect when Plaintiffs were ticketed (*i.e.,* those set forth in Order 24 or those in the schedule attached to Ordinance 09-14) is dependent on a resolution of whether the amended Parking Ordinance in Order 24 took effect. If it did, Defendants' argument that Ordinance 09-14 did not affect the amended Parking Ordinance would be valid. If the amended Parking Ordinance in Order 24 did not take effect, the parking violation fines listed in Ordinance 09-14 would have been in effect at the time Plaintiffs were ticketed. For the reasons stated below, however, the Court need not decide this issue.

**C.      Effect of City's 2018 Ordinance**

Defendants rely on the 2018 Ordinance that amended and restated Section 55-1-32 (Schedule of Fines for Parking Violations) so that "section [would be] commensurate with Emergency Order No. 24, which was issued April 3, 2014 and pursuant to the [LFSCA], being MCL § 141.1541 *et seq*, which increased parking fines and penalties for late payment of fines, thereby affirming actions of the Emergency Manager . . ." The 2018 Ordinance, Section 55-1-32(b) stated, in part, "all actions previously taken by the City, including the Emergency Manager and the Municipal Parking Department . . . , relating to the establishment and collection of parking fines and penalties for the late payment of fines in accordance with Subsection (a) of the section are affirmed." The final section of the 2018 Ordinance stated that the 2018 Ordinance "shall be given retroactive effect April 14, 2014." Defendants contend that, even if there was any deficiency in Order 24, the 2018 Ordinance cured any such defect, which both the Michigan and United States Supreme Courts have recognized is permissible. Citing *Romein v. General Motors*, 436 Mich. 515 (1990) (aff'd *General Motors v. Romein*, 503 U.S. 181 (1992)); *Downriver Plaza Group v. City of Southgate*, 444 Mich. 656 (1994); *Stott v. Stott Realty Co.*, 288 Mich. 35, 45 (1939).

Plaintiffs argue that "a fundamental principle of jurisprudence holds that retroactive application of new law is usually unfair." 2 Singer & Singer, <u>Sutherland</u>

Statutory Construction (7th ed), § 41:2, p. 386 (cited by the Michigan Supreme Court in *Board of Trustees v. City of Pontiac*, 912 N.W.2d 195, 198 n.3 (Mich. 2018). "Primary retroactivity" defines laws that alter the past legal consequences of past private actions . . . statutes that apply with primary retroactivity are usually invalid. *See, e.g., Plaut v. Spendthrift Farm Inc.*, 115 S.Ct. 1447, 1456 (1995)." Jan Laitos, *Legislative Retroactivity*, 52 Wash.U.J.Urb. & Contemp. L. 81, 89 (1997). *See also Landgraf v. USI Film Products*, 511 U.S. 244 (1994). Plaintiffs complain that the City could not retroactively impose new legislation to change the law regarding [what Plaintiffs claim were] the applicable parking fines. Plaintiffs assert that they had a vested right to pay, and enter a "plea" by paying, the correct fine amount authorized by law at the time of the violations, a right that was denied because Defendants deliberately misrepresented the amount of the fine due.

Plaintiffs also argue that the 2018 Ordinance should not be given retroactive effect because it did not correct a misinterpretation of how the law was supposed to be applied or correct a technical defect, as occurred in *Romein* and *Downriver Plaza*, respectively. Defendants state that the City's 2018 Ordinance was an "economic legislative measure" to be considered under the "rational basis standard of review," and should be upheld if it achieves "a legitimate legislative purpose furthered by rational means." *Downriver Plaza*, 444 Mich. at 667. Defendants contend that

Plaintiffs do not have any accrued, vested, breach of contract or right to pay a lesser amount of fine than they paid. Citing *Romein*, 436 Mich. 531-32 ("There are no vested rights in the amount of liability established at the time of an injury.").

The Court concludes that the City's 2018 Ordinance did not retroactively apply a "new law" against Plaintiffs because Plaintiffs are not subject to any retroactive fines – as Plaintiffs concede they have already paid the amounts at issue – and no new or greater obligation was being imposed upon Plaintiffs. But, the Court does not determine Defendants' motion for judgment on the pleadings on this basis.

### D.     Laches and the *Bigger* Doctrine

Defendants argue that Plaintiffs' cause of action should be dismissed because it was not filed until more than three years after the parking violation fines set forth in Order 24 were instituted and collected.  Defendants contend that the collection of revenue from the increased parking violation fines under Order 24 created an "unusual situation" that required Plaintiffs "to resort to the courts without delay." *Bigger v. City of Pontiac*, 390 Mich. 1, 4-5 (1973). *See also Ford Building v. Wayne County*, 1999 WL 33435466, at *2 (Mich. App. 1999) ("it would be inequitable to enforce plaintiffs' claim against defendant because defendant's position had changed materially during" the years after a tax had been levied and the proceeds were applied to construct a juvenile facility).  Defendants assert that Plaintiff could have, and should have, filed

a lawsuit to challenge the increased parking violation fines when Order 24 was implemented or when they began getting notices of parking violations with the new fines, which was as early as June 2014. Defendants state that the revenue projections that enabled the City to emerge from bankruptcy included the increased parking violations revenue to be collected pursuant to Order 24. Defendants argue that:

> In cases where because of the nature of the subject matter, absolute time limits must be observed, the law requires speedy resort to the courts by those who wish to prevent or modify contemplated transactions or procedures. *Cf. O'Brien v. Skinner*, 409 U.S. 1240, 93 S.Ct. 79, 34 L.Ed.2d 211 (1972) per Marshall, J. as Circuit Justice.
>
> Those who would avail themselves of our processes must do so in a manner which facilitates an orderly process of adjudication within the given time frame.
>
> * * *
>
> We are of the opinion that in cases of this kind, if the plaintiff fails to resort to the courts without delay (within the context of the time available for adjudication) the courts may refuse to entertain the case. This power is, of course, to be exercised cautiously, circumspectly and only in the kind of unusual situation with which we are now presented.

*Bigger*, 390 Mich. 4-5.

Plaintiffs state that the City was not required by the Bankruptcy court or the terms of the C Note Bonds to increase parking violation fines or take any action to maintain parking revenue at any particular level. Plaintiffs state that this lawsuit cannot and would not invalidate any bond issued by the City, particularly as the C

Note bonds have been retired. The Court finds that Plaintiffs mistakenly claim that Defendants relied on *Bigger* "for the proposition that Plaintiffs should have intervened in the bankruptcy to stop the sale of C Note bonds." For that reason, Defendants claim that Plaintiffs' argument that they are not seeking to invalidate any terms of the bond sale or revenue pledged to pay the bond is irrelevant.

Plaintiffs also suggest that this case is unlike *Ford Building*, where the Michigan Court of Appeals barred plaintiffs from bringing claims about a millage that had been in effect for nine years before plaintiffs sought to intervene. Plaintiffs conclude that their claims "do not seek a refund of millage taxes raised." Dkt. No. 36, PgID 680. Again, Plaintiffs' argument is misplaced because Defendants cite *Ford Building* for its analysis regarding the *Bigger* doctrine. Specifically, Defendants note that the *Bigger* doctrine was not limited to the enjoinment of the sale or delivery of bonds but instead "was designed to deal with challenges which could prevent or frustrate public improvements in general." *Ford Building*, 1999 WL 33435466, at *2 (quoting *Walled Lake Cons. Sch. Dist. v. Charter Twp. of Commerce*, 174 Mich.App. 434, 436-37 (1989)). Defendants assert that the City's Bankruptcy Plan of Adjustment "was perhaps the epitome of a 'public improvement' project[.]" Dkt. No. 41, PgID 784.

The Court finds Defendants' argument persuasive. First, Plaintiffs could have brought this case at least three years earlier, when they began receiving and paying notices of parking violations in June 2014. Second, as Defendants claim, the purpose behind the *Bigger* doctrine, dealing "with challenges which could prevent or frustrate public improvements" is satisfied in this instance. The City relied upon the revenue received from increasing the parking violation fines to $45 and eliminating the $10 discount for promptly paid fines when its Bankruptcy Plan was confirmed in November 2014, still more than three years prior to the filing of this case. Still, the Court does not base its decision regarding Count I on this issue.

## E.    Res Judicata or Claim Preclusion

The Full Faith and Credit Act provides, in relevant part, that "the records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of the state from which they are taken." *U.S. v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004). Under Michigan law, a final judgment on the merits bars a subsequent suit involving the same transaction or occurrence and the same parties. *See, e.g., Sewell v. Clean Cut Mgt., Inc.*, 463 Mich. 569 (2001).

Res judicata will apply if (1) the prior action was decided on the merits; (2) the decree in the prior action was a final decision; (3) the matter contested in the second

case was or could have been resolved in the first; and (4) both actions involved the same parties or their privies. *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich.App. 1, 10 (2003). Michigan courts have broadly defined *res judicata* to bar litigation in the second action not only of those claims actually litigated in the first action, but also every claim arising out of the same transaction that the parties, exercising reasonable diligence, could have litigated but did not. *Sewell*, 463 Mich. at 575; *Peterson*, 259 Mich.App. at 11. The test for determining whether two claims arise out of the same transaction or occurrence for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the two actions. *Jones v. State Farm Mut. Ins. Co.*, 202 Mich.App. 393, 401 (1993).[2]

Defendants argue that all four res judicata elements have been satisfied in this case. First, the notices of parking violations issued to Plaintiffs were decided on the merits, as Plaintiffs admitted responsibility for each parking violation in the amounts stated on the tickets as a result of their payments. Second, the payment of the fines for

---

[2]In its modern form, the doctrine of *res judicata* involves both "claim preclusion" and "issue preclusion." *See Migra v. Warren City Sch. Distr. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Claim preclusion involves three elements: 1) there must be a final judgment on the merits in the prior lawsuit; 2) the same claims are involved; and 3) the same parties or their privies are involved. *EEOC v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990); *Montana v. United States*, 440 U.S. 147, 153-54 (1979); *James v. Gerber Products Co.*, 587 F.2d 324, 327-28 (6 th Cir. 1978). *Res judicata* requires that a plaintiff initially raise all claims in prior suits and therefore bards those claims from being litigated at some future time. *See Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031-32 (6th Cir. 1998).

the parking violations were final decisions. Third, the resolution of the parking violations and this action involve the same parties. Although neither Defendant Norman White nor Defendant James Canty were parties to the proceedings involving Plaintiffs' parking violations, as employees of the City, they are deemed to be in privity with the City. *See, e.g., Motuelle v. Ruffini*, 2004 WL 1254304 (Mich. Ct. App. 2004) (per curiam). Finally, Plaintiffs had the opportunity to raise the same core claim asserted here – that the new fine schedule had not been properly enacted – but chose not to do so.

Plaintiffs argue that the doctrine of res judicata does not bar their claims for several reasons: (1) Plaintiffs did not previously, and are not now, challenging their responsibility for committing the parking violations for which they were cited; (2) Plaintiffs did not have a meaningful opportunity to contest the amount of the fines because the City only provides for defense as to whether the violation had been committed; and (3) Plaintiffs were only issued notices of parking violations, for which fines are paid to the City parking violations bureau, not notices of civil infractions. *See* M.C.L. § 257.741 (a civil infraction is a civil action and "is commenced upon the issuance and service of a citation").

Plaintiffs argue that the cases Defendants cite to support their res judicata argument are distinguishable. Plaintiffs primarily challenge Defendants' reliance on

*Coatney v. City of Dearborn*, 2009 WL 322032 (E.D. Mich. 2009). In *Coatney*, the plaintiffs received tickets issued under the Michigan Uniform Traffic Code that could be challenged in state court proceedings. Plaintiffs argue that, in this case, there were no citations issued to them and there was no state court proceeding in which they could challenge the amount of the fines. For the same reason (that the courts noted the existence of underlying state court proceedings), Plaintiffs assert that Defendants' reliance on *Leach v. Manning*, 105 F.Supp.2d 707 (E.D. Mich. 2000); *Costa v. City of Detroit*, 2013 WL 318042 (E.D. Mich. 2013); and *Lavarach v. City of Oak Park*, 194 F.3d 1313 (6th Cir. 1999), is not binding or persuasive in this case.

Defendants counter that Plaintiffs could have demanded a court hearing or, if they had chosen, a hearing before the parking violations bureau, and then appealed any adverse determination to the Michigan 36th District Court, then Wayne County Circuit Court, the Michigan Court of Appeals, and even the Michigan Supreme Court. As Plaintiffs acknowledge, pursuant to M.C.L. § 600.395, the City has established a parking violation bureau to "collect and retain fines, penalties, and costs as prescribed by this chapter." City Code, Section 55-1-16(a). The parking violations bureau resolves parking violation notices when the fine on the notice of parking violation is paid within 30 days, *id.* at Section 55-1-45(b)(1), but a person can fight the notice of parking violation pursuant to Section 55-1-46 of the City Code. A person who denies

responsibility for a parking violation "can request that a citation be filed and heard by the court having jurisdiction thereof." Section 55-1-16(c). Section 55-1-46 of the Code provides:

> If the registered owner of a vehicle alleged to be in violation of the parking provisions, either of the Michigan Vehicle Code or of this Code, contests the parking violation notice at a hearing before the Administrative Hearings Tribunal or contests the citation at a hearing before the court having jurisdiction over such violation, such registered owner may raise the following defenses with appropriate evidence to support that:
>
> > (1) The registered owner was not the registered owner of the vehicle at the time of the alleged violation; and/or
> >
> > (2) There was no violation of a statute or this Code pertaining to parking."

Section 55-1-46 of the City Code.

Plaintiffs also argue that they had no ability to challenge the amount of their parking violation fines because Section 55-1-16(c) provides for only two defenses, as noted above. As Defendants argue, however:

> The Court should reject this argument for several reasons. First, section 55-1-16(c) is concerned with defenses to *liability or responsibility* for a parking ticket, not the amount of the fine itself, which is a separate inquiry. But Plaintiffs have not contested responsibility for the tickets at issue. Therefore, it is not relevant what defenses to liability or responsibility Plaintiffs could have asserted.

Second, even if defenses to liability or responsibility were relevant, section 55-1-16(c) does not purport to state an exclusive or exhaustive list of potential defenses to liability. Missing from the section are words connoting exclusivity, such as "only" or "limited to."

Third, Plaintiffs' position that they could not have objected to the amount of the fines is refuted by the tickets themselves, which advised Plaintiffs that "You may explain the circumstances of the violation for which the Parking Violation Bureau may consider in determining ***the amount of your fine*** and costs."

Finally, Plaintiffs' argument would lead to absurd results, if carried to its logical extremes. Under Plaintiffs' position, even if the City charged them a million dollars per ticket, they would have been powerless to contest this through the City's parking ticket adjudicative system. This would be nonsensical.

Dkt. No. 41, PgID 785-86 (footnotes omitted, emphasis in original).

Because Defendants can show that Plaintiffs had an avenue to challenge the amount of the fines in state court proceedings, Defendants prevail on their res judicata argument. Accordingly, the Court holds that Defendants are entitled to judgment on the pleadings – and grants Defendants' motion – with respect to Count I of Plaintiffs' complaint.

## F. Counts II and III (RICO Claims)

In their response briefs, Plaintiffs voluntarily dismiss their RICO claims set forth at Counts II and III of their Amended Complaint.

## G. Count IV (Unjust Enrichment)

Under Michigan law, the elements of unjust enrichment are: "the receipt of a benefit by a defendant from a plaintiff, which benefit it is inequitable that the defendant retain."

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 567 (E.D. Mich., 2009). *See also* AFT Mich. V. Michigan, 303 Mich.App. 651, 677 (2014), aff'd sub nom. *AFT Mich. v. State of Michigan*, 497 Mich. 197 (2015). Defendants argue that Plaintiffs cannot recover on an unjust enrichment claim because there is no inequity or injustice in the City retaining revenues obtained from lawfully established parking violation fines.

Plaintiffs argue only that they have stated an unjust enrichment claim against Defendants because Defendants "knowingly demanded and received parking fine amounts in excess of the amount they were entitled to collect. It is inequitable for Defendants to retain these overpayments where Plaintiffs' and the City's residents and visitors were entitled to pay less."

The viability or dismissal of this claim turns on whether Plaintiffs have a viable claim for municipal liability (Count I). As the Court has concluded that Defendants are entitled to judgment with respect to Count I based on res judicata, Plaintiffs' unjust enrichment claim (Count IV) is dismissed.

## H. Count V (Assumpsit)

In 1963, assumpsit was abolished as an independent cause of action. *See Fisher Sand & Gravel Co. v. Neal A. Newbie, Inc.*, 494 Mich. 543, 564 (2013). Plaintiffs do not dispute that assumpsit has been abolished as an independent cause of action, but Plaintiffs argue that they "have properly stated a claim for assumpsit/money had and received." Plaintiffs note that, "notwithstanding the abolition of assumpit, the substantive remedies traditionally available under assumpsit were preserved." *Fisher Sand*, 494 Mich. at 564 (citing Committee Comment, reprinted in 1 Honigman and Hawkins, Michigan Court Rule Annotated (2d Ed.) at 179).

As *Fisher Sand* makes evident, assumpsit has been abolished as a cause of action, but the remedies "traditionally available under assumpsit" remain. A remedy, however, is not a cause of action. *See, e.g., Meadow v. Nibco, Inc.*, 2016 WL 2986350, at *8 (M.D. Tenn. May 24, 2016) (dismissing causes of action for declaratory and injunctive relief "because declaratory and injunctive relief are remedies, not causes of action"). Accordingly, if Plaintiffs had a viable cause of action, it would be able to seek remedies traditionally available under assumpit, but because Count V is a claim for assumpsit, it is dismissed.

## V. CONCLUSION

Accordingly, for the reasons set forth above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. [Dkt. No. 32]

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: March 27, 2019                    UNITED STATES DISTRICT JUDGE